# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN GILBERT,<br><br>    Plaintiff,<br><br>    v.<br><br>MOHAMMED MUTHANA and SALEH MUTHANA,<br><br>    Defendants. | Case No. 1:21-cv-01333-JLT-SKO<br><br>**FINDINGS AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART**<br><br>(Doc. 12)<br><br>**OBJECTIONS DUE: 21 DAYS** |

On January 24, 2022, Plaintiff Darren Gilbert ("Plaintiff") filed a motion for default judgment against Defendant Mohammed Muthana ("Mohammed"), pursuant to Fed. R. Civ. P. 55(b) (the "Motion"). (Doc. 12). No opposition to the Motion was filed. (*See* Docket.) After having reviewed the papers and supporting material, the matter was deemed suitable for decision without oral argument pursuant to E.D. Cal. Local Rule 230(g), and the Court vacated the hearing set for February 23, 2022. (Doc. 16.) On April 8, 2022, the undersigned issued findings and a recommendation that the Motion be denied without prejudice, as Defendant Saleh Muthana ("Saleh") had not been properly served and Plaintiff's claims against him remained pending. (Doc. 17.)

On April 15, 2022, Plaintiff filed a notice of voluntary dismissal of Mohammed (Doc. 18), and the Court subsequently withdrew the pending findings and recommendation and denied the Motion as moot on April 19, 2022 (Doc. 19).  On April 26, 2022, Plaintiff filed a notice of errata indicating that the notice of voluntary dismissal filed on April 15, 2022, dismissed the wrong defendant.  (Doc. 20.)  Accordingly, the Court struck the notice of voluntary dismissal from the docket and vacated its prior order terminating Mohammed as a defendant and denying the Motion as moot.  (Doc. 21.)  On April 28, 2022, Plaintiff filed a notice of voluntary dismissal without prejudice of Saleh, who was then terminated from the case.  (Docs. 22, 23.)

For the reasons set forth below, the undersigned recommends that the Motion be granted in part.[1]

## I. BACKGROUND[2]

On September 2, 2021, Plaintiff filed a complaint against Defendants Mohammed Muthana and Saleh Muthana (collectively, "Defendants") pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; the California Unruh Act (the "Unruh Act"), California Civil Code § 51 *et seq.*; and California Health & Safety Code §§ 19955, 19959.  (Doc. 1 (the "Complaint").)  The Complaint seeks an award of statutory damages, prejudgment interest on the damages, costs of suit, attorney's fees, and injunctive relief.  *Id.*  Plaintiff alleges that Defendants own, operate, and/or lease the property that is the subject of this suit, Levi's Tobacco & More (the "Facility"), located at 241 7th St, Modesto, CA 95354.  (Doc. 1, ¶¶ 1, 7.)  Plaintiff further alleges that he requires the use of a wheelchair or prosthetic for mobility (Doc. 1, ¶ 8), and the Facility presents numerous architectural barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Facility (Doc. 1, ¶ 10).

According to the proofs of service filed by Plaintiff, Mohammed was served with copies of the summons and complaint by substitute service on September 24, 2021, when the documents were

---

[1] The motion for default is referred to the undersigned by E.D. Cal. Local Rule 302(c)(19) for the entry of findings and recommendations.  *See* 28 U.S.C. § 636(b)(1)(B).

[2] Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  Accordingly, the factual background is based on the allegations of the Complaint.

left with "Abraham Doe (refused last name)," a co-occupant at 1930 River Tree Ln, Modesto, CA 95351, and subsequently mailed to the same address. (Doc. 4 at 2.) A declaration from Plaintiff's counsel Tanya E. Moore indicates that Ms. Moore conducted a public records search using the Lexis Advance database and determined that Mohammed resided at that address. (Doc. 12-2, ¶ 15.) Substitute service was made after unsuccessful attempts to personally serve Mohammed on September 21, and 22, 2021. (Doc. 4 at 3.)

Saleh was served with copies of the summons and complaint by substitute service on September 23, 2021, when the documents were left with "Tony Doe (refused last name), Apparently in Charge," at 241 S 7th St, Modesto, CA 95354, and subsequently mailed to the same address. (Doc. 5 at 2.) Substitute service was made after unsuccessful attempts to personally serve Saleh on September 21, and 22, 2021. (Doc. 5 at 3.)

Neither of Defendants responded to the Complaint. (*See* Docket.) Plaintiff requested the Clerk of Court to enter default against Defendants on November 5, 2021, which was entered that same day. (Docs. 8, 9.) On January 24, 2022, Plaintiff filed a motion for default judgment against Mohammed, which is currently pending before Court. (Doc. 12.)

## II.   DISCUSSION

### A.   Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

"In addition, before awarding a default judgment against a defendant, the court must determine the adequacy of service of process, as well as the court's jurisdiction over the subject matter and the parties." *Sentinel v. Komar*, No. 119CV00708DADEPG, 2021 WL 1346025, at *6 (E.D. Cal. Apr. 12, 2021) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Kaldawi v. Kuwait*, 709 F. App'x 452, 453 (9th Cir. 2017); *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007)).

**B.     Analysis**

       **1.     Defendant Mohammed Muthana Was Properly Served**

Service of a complaint in federal court is governed by Federal Rule of Civil Procedure 4. Under Rule 4, an individual may be served by: (1) delivering a copy of the summons and of the complaint to that person personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2).

The Court finds that adequate service has been made on Mohammed. Counsel for Plaintiff, Ms. Moore, determined Mohammed's residential address by conducting a public records search using the Lexis Advance database. (Doc. 12-2, ¶ 15.) After two unsuccessful attempts at personal service at that address on September 21, and 22, 2021, the process server left copies of the complaint and summons with "Abraham Doe (refused last name)," a co-occupant at 1930 River Tree Ln, Modesto, CA 95351, and subsequently mailed to the same address. (Doc. 4 at 2.) Accordingly, the

4

undersigned concludes that service of Mohammed was adequate under Federal Rule of Civil Procedure 4(e)(2). *See* Fed. R. Civ. P. 4(e)(2) (permitting service on an individual by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there).

### 2. The Court Has Jurisdiction Over This Case

District courts have subject matter jurisdiction of all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. In any civil action where the district courts have subject matter jurisdiction, the courts will also have supplemental jurisdiction over all other claims that are "so related to claims in the action," such that "they form part of the same case or controversy." 28 U.S.C. § 1367. Here, subject matter jurisdiction exists over Plaintiff's ADA claim because it arises under a federal law. The Court has supplemental jurisdiction over Plaintiff's state law claim under the California Unruh Act as it arises out of the same "case or controversy" as the ADA claim, namely Plaintiff's visit to the Facility where he encountered alleged violations of both laws. *See* 28 U.S.C. § 1367(a).

The Court also has personal jurisdiction over Defendant Mohammed because he has "certain minimum contacts" with California such that "the suit does not offend 'traditional notions of fair play and substantial justice.' " *Calder v. Jones*, 465 U.S. 783, 788 (1984) (citation omitted). Specifically, Mohammed owns, operates, and/or leases the Facility located at 241 7th St, Modesto, CA 95354. (Doc. 1, ¶¶ 1, 7.)

Therefore, the Court has jurisdiction over this matter.

### 3. The *Eitel* Factors Weigh in Favor of Granting a Default Judgment

#### a. Possibility of Prejudice to Plaintiff

If default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendants participate and make an appearance in the litigation—which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("prejudice" exists where the plaintiff has no "recourse for recovery" other than default judgment). Therefore, Plaintiff would be prejudiced if the Court were to deny its motion. This factor weighs in

favor of default judgment.

### b. Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The next relevant *Eitel* factor include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In weighing this factor, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined as a failure to remove "barriers . . . where such removal is readily achievable." *Id*. at § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 945 (9th Cir. 2011) (en banc). Where a barrier's removal is not "readily achievable," a public accommodation must make its facilities available through "alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

According to the complaint, Plaintiff is "substantially limited in his ability to walk, "must use a wheelchair or prosthetic for mobility," and he is thus "physically disabled" as defined by the applicable California and federal laws. (Doc. 1, ¶ 8.) Plaintiff alleges that the Facility is a facility

of public accommodation, does not function as a residence, and its activity affects commerce. (*Id.* ¶ 9.) Plaintiff further alleges that Mohammed owns, operates, and/or leases the Facility, (*Id.* ¶ 7), and is liable for the Facility's compliance with the ADA.[3]

Plaintiff visited the Facility on or about July 24, 2021, and alleges that Mohammed failed to provide barrier-free access to the Facility in the following ways: (1) the surface of the parking stall was uneven, with large cracks in the pavement, which could have caused his wheelchair or knee scooter to "get stuck" had Plaintiff been using one of them; and (2) the route between the curb ramp and the Facility entrance was obstructed by both an ice machine and the propped-open door to the Facility, which made the route difficult for Plaintiff to maneuver. (Doc. 1, ¶ 10.)

Plaintiff alleges that the removal of these architectural barriers is readily achievable, or alternatively, the services could have been made available through alternative methods that were readily achievable. (Doc. 1, ¶¶ 21-22.) As these facts are taken as true regarding Defendant Mohammed following entry of default against him, Plaintiff has met his burden of stating a *prima facie* Title III discrimination claim.

Pursuant to the Unruh Civil Rights Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal Civ. Code, § 51(b). Additionally, no business establishment of any kind whatsoever shall discriminate against any person in California on account of disability. Cal. Civ. Code, § 51.5. The Unruh Act also incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code, § 51(f). Here, Plaintiff alleges that Defendants denied him full and equal accommodations, advantages, facilities, privileges and services in a business establishment based on his disability. (Doc. 1, ¶ 38.) Because Plaintiff's complaint properly alleges a *prima facie* claim under the ADA, Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Civil Rights Act claim.

California Health and Safety Code § 19955, mandates that all public accommodations

---

[3] Defendants are jointly and severally liable for ADA violations in any of these capacities. *See Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000).

7

constructed in California comply with the requirements of California Government Code § 4450. Pursuant to Section 4450, "all buildings, structures, sidewalks, curbs, and related facilities, construed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities." Cal. Gov. Code, § 4450(a). Additionally, non-exempt public accommodations constructed prior to July 1, 1970, and later altered or structurally repaired, are required to comply with the same requirements of the California Health and Safety Code. Cal. Health & Safety Code § 19959.

For purposes of pleading his claim, Plaintiff incorporates his prior allegations regarding the barrier he encountered at the Facility (Doc. 1, ¶ 42), and further alleges that the Facility is a public accommodation "constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under the Health and Safety Code § 19956" (Doc. 1, ¶ 45). Although substantially boilerplate, this claim is sufficiently pleaded. *See Loskot v. D & K Spirits, LLC,* No. 2:10-cv-0684-WBS-DAD, 2011 WL 567364 at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment). *See also Gutierrez v. Leng*, No. 1:14-CV-01027-WBS, 2015 WL 1498813, at *4 (E.D. Cal. Mar. 31, 2015) (same).

The Complaint sufficiently states Plaintiff's claim under Title III of the ADA, the Unruh Civil Rights Act, and California Health and Safety Code §§ 19955 and 19959, and the substantive allegations appear to have merit. As such, these *Eitel* factors weigh in favor of default judgment.

### c. The Sum of Money at Stake in the Action

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable considering the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594–JSW, 2007 WL 1545173 at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff is seeking a default judgment in the amount of $7,621.90, which includes attorney's fees and costs.[4]

---

[4] Plaintiff requests statutory damages in the amount of $4,000.00 and attorney's fees and costs in the amount of $3,621.90, for a total of $7,621.90. (Doc. 12-1 at 5–7.)

8

This is not a relatively large sum of money, nor does it appear unreasonable, subject to the deductions set forth below.

### d. The Possibility of a Dispute Concerning the Material Facts

Regarding this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917–18, and Defendants have submitted nothing to contradict the well-pleaded allegations in the Complaint. *See United Specialty Insurance Co. v. Saleh*, No. 1:16–cv–00632–DAD–MJS, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016) ("Inasmuch as default serves as an admission of Plaintiff's well-pled allegations of fact, it must be concluded that there is no dispute as to any material fact.") (internal citation omitted). Accordingly, this factor favors entry of default judgment.

### e. Whether Default Was Due to Excusable Neglect

Defendant Mohammed failed to file responsive pleadings or oppose Plaintiff's motion for default judgment. The Court has no evidence before it to establish that Mohammed's failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

### f. Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

### 4. Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

### a. Injunctive Relief

Plaintiff's Complaint and motion for default judgment seek an injunction requiring Defendant Mohammed to make several changes and accommodations at the Facility. (Doc. 1, ¶ 10; Doc. 12-1 at 5.) As the factual allegations in the complaint are taken as true, Plaintiff is entitled to injunctive relief as requested pursuant to both state and federal law. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA—only injunctive

relief is available for violations of Title III.").

### b. Statutory Damages

The Unruh Civil Rights Act provides for, among other things, a minimum statutory damages amount of $4,000 per violation. Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a maximum of three times the actual damages but no less than $4,000 for each instance of discrimination"). A violation of the ADA constitutes a violation of the Unruh Act. As such, Plaintiff asserts that he is entitled to $4,000 in statutory damages pursuant to the California Civil Code § 52(a). (Doc. 1, ¶ 40.)

Plaintiff has sufficiently alleged facts indicating he visited the Facility on or about July 24, 2021, and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Facility. (Doc. 1, ¶ 10.) Thus, Plaintiff is entitled to an award of $4,000 in statutory damages.

### c. Attorney's Fees and Costs of Litigation

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion. California Civil Code § 55 also provides for attorney's fees and costs for obtaining injunctive relief; section 54.3 provides fees for recovery of damages to enforce the "full and equal access" guaranteed to disabled persons by Section 54.1.

Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [*See D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990); *Hensley v. Eckerhart*, 461 U.S. 424,] 461 (1983)]. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *See Hensley*, 461 U.S. at 433.

> A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [Footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

Here, Plaintiff seeks an award of $3,085.50 for total billable time spent on the case by the Mission Law Firm, as well as $536.40 for costs. (Doc. 12-1 at 7–10.) Specifically, Plaintiff requests (1) $2,430.00 for 8.1 hours of work expended by Tanya E. Moore, Esq., at an hourly rate of $300; (2) $322.00 for 2.8 hours spent by paralegal Whitney Law at an hourly rate of $115; and (3) $333.50 for 2.9 hours spent by paralegal Isaac Medrano at an hourly rate of $115. (Doc. 12-1 at 7.)

### i. Ms. Moore's Time Expended and Hourly Rate

The Court finds that the number of hours Ms. Moore billed in this case is not reasonable given the nature of this case and Ms. Moore's experience in these types of actions. On August 29, 2021, Ms. Moore recorded 1.0 hour reviewing and finalizing a draft of the complaint, including reviewing "all information obtained from the client" and "independent investigation to confirm barriers encountered constitute violations of ADA." (Doc. 12-3, Ex. A.) That entry also recorded time for "communications with the client and instructions to JM re finaliz[ing] the complaint for filing." (*Id.*) Based upon the Court's familiarity with the actions filed by Ms. Moore's firm in this court, the Court is aware that this is basically a form complaint. The Complaint filed in this action is nearly identical to complaints filed by Ms. Moore in dozens of other actions in this Court, with only the names of the parties and the allegations in paragraph ten changed to reflect the facts specific to this case. The Court finds that 0.5 hours of Ms. Moore's time is sufficient to finalize the Complaint and review the supporting information. The Court will therefore deduct 0.5 hours from Ms. Moore's time entry on August 29, 2021.

On October 18 and 19, 2021, Ms. Moore recorded 0.5 hours reviewing proofs of service and instructing paralegal Isaac Medrano regarding "same." (Doc. 12-3, Ex. A.) Fees for work that is clerical in nature are considered part of normal overhead costs and are not included in recoverable hours. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). The Court finds that reviewing proofs of service is a clerical task and will thus deduct 0.5 hours from Ms. Moore's time. *See, e.g.*, *Trujillo v. Malwa Food Mart Inc.*, No. 1:21–CV–01580–AWI–BAM, 2022 WL 1214849, at *7 (E.D. Cal. Apr. 25, 2022) (deducting time for reviewing proofs of service).

Finally, on January 3 and 10, 2022, Ms. Moore spent 1.5 hours in connection with the motion for entry of default judgment, including preparing and reviewing the motion and supporting declarations. (Doc. 12-3, Ex. A.) Ms. Law reported spending a total of 1.9 hours on November 9 and 24, 2021, and January 3 and 4, 2022, in connection with that motion, including reviewing the case file "re: readiness for default judgment motion," instructing Mr. Medrano regarding the preparation of the motion, and reviewing and revising the motion for and supporting documents prepared by Mr. Medrano. (*Id.*) Mr. Medrano reported spending a total of 1.5 hours drafting the motion and supporting documents on January 3, 2022. (*Id.*) The motion for default judgment filed in this case is nearly identical to motions for default judgment filed by Ms. Moore in other actions before this Court. Accordingly, the Court finds that one hour of Ms. Moore's time and one hour of paralegal time is sufficient to prepare the motion. *See Gutierrez*, 2015 WL 1498813, at *9; *Moore v. E-Z-N-Quick*, No. 1:13–cv–01522–LJO–SAB, 2014 WL 1665034 (E.D. Cal. Apr. 24, 2014); *Trujillo v. Ali*, No. 1:16–cv–00694–LJO–SKO, 2016 WL 6902313, at *7 (E.D. Cal. Nov. 23, 2016). The Court will therefore deduct 0.5 hours from Ms. Moore's time entries, 1.4 hours from Ms. Law's time entries, and 1.0 hour from Mr. Medrano's time entries, which are related to the preparation and filing of the motion for default judgment.

With regard to the hourly rate to be charged, courts generally calculate these rates according to the prevailing market rates in the relevant legal community. *Blum*, 465 U.S. at 895. In general, courts use the rates of attorneys practicing in the forum district, here, the Eastern District of California, Fresno. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1993); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991). The fee applicant bears the burden of producing

12

sufficient evidence that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.

Plaintiff asserts that Ms. Moore specializes in representing plaintiffs in disability actions, and Ms. Moore's declaration states she has filed and successfully prosecuted over 1,500 civil rights actions, she has handled numerous litigation matters through trial, and has been practicing law for twenty years—eleven of which have been spent specializing in disability access litigation. (Doc. 12-2, ¶¶ 3–4.) She usually bills at $495 per hour but has reduced her hourly rate requested in this case to $300. (*Id.* ¶ 6.)

This Court has previously found Ms. Moore's hourly rate of $300 to be within the adjusted prevailing hourly rate for the Fresno area, based on the Laffey Matrix and the United States Bureau of Labor Statistics wage estimates. *See Trujillo v. Malwa Food Mart Inc.*, 2022 WL 1214849, at *6. *Accord Trujillo v. Singh*, No. 1:16–cv–01640–LJO–EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017); *Trujillo v. Lakhani*, No. 1:17–cv–00056–LJO–SAB, 2017 WL 1831942, at *7 (E.D. Cal. May 8, 2017). Accordingly, the Court finds that Ms. Moore's requested hourly rate of $300 is reasonable and recommends that Plaintiff be awarded the sum of $1.980.00 for work performed by Ms. Moore.[5]

### ii.  Paralegal Rate and Time Expended

Plaintiff seeks compensation for 2.8 hours expended by paralegal Ms. Law at $115 per hour, and 2.9 hours expended by paralegal Mr. Medrano at $115 per hour. (S*ee* Doc. 12-1 at 6–7; Doc. 12-3, Ex. A; Doc. 12-4; Doc. 12-5.) The Court finds that these requested hourly rates reasonable. *See, e.g., Trujillo v. Malwa Food Mart Inc.*, 2022 WL 1214849, at *6; *Trujillo v. Singh*, 2017 WL 1831941, at *3. *See also Silvester v. Harris*, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 17, 2014).

Regarding the number of hours expended by Ms. Law, her total hours are reduced by 1.4 hours, as discussed above, and an additional 0.1 hours for time spent reviewing the Court's minute

---

[5] This amount consists of the amount of time recorded by Ms. Moore (8.1 hours) minus the Court-recommended reduction in time spent in excessive or duplicative tasks (1.5 hours), for an adjusted time of 6.6 hours multiplied by Ms. Moore's requested hourly rate of $300 per hour.

13

order continuing the scheduling conference, which is a clerical task, on November 10, 2021 (*see* Doc. 12-3, Ex. A), for a total of 1.3 hours.  With respect to the number of hours expended by Mr. Medrano, the Court finds that the amounts indicated for certain tasks are reasonable; however, some of the time expended—in addition to that noted above—are unreasonable, duplicative, or inadequately documented and should be reduced.  On September 7, 2021, Mr. Medrano recorded 0.2 hours to review the order setting scheduling conference, calendar the hearing date, set the deadline for Rule 26 meet and confer, and set the deadline to file a joint scheduling report. (Doc. 12-3. Ex. A.)  On October 25, 2021, Mr. Medrano recorded 0.1 hours for updating Defendant Mohammed's address for service on the CCDA portal.  (*Id.*)  The Court finds that these billable entries generally describe clerical tasks and should not be reimbursed at a paralegal rate.  Accordingly, 0.3 hours will be deducted from Mr. Medrano's time.  *See Trujillo v. Malwa Food Mart Inc.*, 2022 WL 1214849, at *7 (deducting Mr. Medrano's time for those same tasks).

Based on the foregoing, the Court recommends Plaintiff be awarded 1.3 hours of time expended by Ms. Law at an hourly rate of $115, and 1.6 hours of time expended by Mr. Medrano at an hourly rate of $115, for a total of $333.50.

### iii.     Costs

Plaintiff seeks to recover costs in the amount of $536.40.  (Doc. 12-1 at 7; Doc. 12-2, ¶¶ 12–13; Doc. 12-2, Exs. B & C.)  In Section 12205 of the ADA, Congress authorized a district court, in its discretion, to allow the prevailing party other than the United States to recover a reasonable attorney's fee, including litigation expenses and costs.  42 U.S.C. § 12205.  The statutory provisions of the ADA provide direct authority for the award of expert witness fees as litigation expenses under the ADA.  *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002).  The costs here include expenses for the court filing fee and costs of service, which are compensable pursuant to 42 U.S.C. § 12205 and *Lovell*.  303 F.3d at 1058.  Plaintiff's overall costs are compensable and should be awarded.  Accordingly, it is recommended that Plaintiff be awarded the sum of $536.40 for costs.

///

///

///

### d. Conclusion

For the reasons set forth above, the Court recommends Plaintiff be awarded the following fees:

| Professional | Hourly Rate | Hours | Total |
|---|---|---|---|
| Ms. Tanya Moore | $300 | 6.6 | $1,980.00 |
| Ms. Whitney Law | $115 | 1.3 | $149.50 |
| Mr. Isaac Medrano | $115 | 1.6 | $184.00 |
|  |  | **Total Fees** | $2,313.50 |

Additionally, Plaintiff should be awarded $536.40 for the costs of suit and $4,000 in statutory damages. Thus, the total award of damages, fees, and costs recommended is $6,849.90.

### III. CONCLUSION AND RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. 12) be GRANTED IN PART;
2. Judgment be entered in Plaintiff's favor and against Defendant Mohammed Muthana;
3. Defendant Mohammed Muthana be found and declared to be in violation of Title III of the Americans with Disabilities Act;
4. Plaintiff be awarded statutory damages under the Unruh Act in the amount of $4,000;
5. Plaintiff be awarded reasonable attorney's fees in the amount of $1,980.00 (6.6 hours at $300 per hour), paralegal fees in the amount of $333.50 (2.9 hours at $115 per hour), and costs of suit in the amount of $536.40; and
6. Defendants be ordered to make the following modifications to the property known as Levi's Tobacco & More, located at 241 7th Street in Modesto, California (the "Facility"), such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, as follows:
    a. Provide a properly configured and identified accessible parking stall with

    adjacent access aisle, which shall be free of excessive slopes, height changes, and openings in the walking surface; and

  b.  Provide and maintain properly configured accessible route of travel from the designated accessible parking to the Facility entrance.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to Defendant Mohammed Muthana at his last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  **June 17, 2022**        /s/ *Sheila K. Oberto*
                   UNITED STATES MAGISTRATE JUDGE